### DANIEL v. GEO. W. OWENS LUMBER & LOAN CO.
### No. 3000.

Court of Civil Appeals of Texas. El Paso.
June 21, 1934.

Rehearing Denied July 5, 1934.

Lewis M. Dabney, Jr., and Thompson, Knight, Baker & Harris, all of Dallas, for appellant.

J. L. Lipscomb and McBride, O'Donnell & Hamilton, all of Dallas, for appellees.

WALTHALL, Justice.

This is the second appeal of this case. See Owens et al. v. Daniel (Tex. Civ. App.) 16 S.W.(2d) 306.

On this trial the case was submitted to a jury on special issues, and upon the jury's

findings the court entered judgment for appellee, from which this appeal is prosecuted.

In this case appellant, Oliver Daniel, sued appellees, J. T. Owens, E. S. Owens and G. W. Owens, a copartnership doing business under the name of Geo. W. Owens Lumber & Loan Company, to recover the purchase price of a carload of lumber shipped by rail from Carthage, Tex., to appellees at Dallas, Tex. The shipment arrived in Dallas, was unloaded by appellees, and placed in their lumber yard, where it was shortly afterwards destroyed by fire.

The principal question presented in the case is whether or not the lumber had been accepted by appellees and title passed to them before the fire.

The record shows without controversy that shortly before April 8, 1926, the date of the shipment of the lumber appellees ordered of appellant a car of pine lumber; the order being sent through one H. W. Walker, a broker. Appellees claim the lumber as shipped was not up to grade and somewhat different in the number of pieces and in dimensions from the lumber ordered. An invoice of the lumber shipped was sent to appellees which arrived several days before the lumber and which correctly showed the contents of the car. Upon receipt of the invoice, one of appellees, acting for appellees, wrote appellant, as follows:

"Dallas, Texas, April 16, 1926.
"Mr. Oliver Daniel, Carthage, Texas.

"Dear Sir: We are in receipt of your invoice covering car A. T. 47916, containing finish for our opening stock in our new yard here.

"This shipment is so out of all proportion and reason to what we ordered that we phoned Mr. Walker to refuse the car, but he has been out of the City, and we have gone ahead and unloaded the car in order to save demurrage.

"This is notice to you that we are not going to accept this car shipped in this condition at these prices, and as soon as I can see Mr. Walker I will tell him what we will do."

On special issues submitted the jury found that during the course of dealings between appellant and appellees there had grown up a custom between them that the unloading of a car of lumber and placing it in the yard of the consignee did not constitute an acceptance of all of said lumber at the price ordered per thousand feet; that there did not exist among lumber dealers in Dallas in April, 1926, a general custom to the effect that,

after a buyer of lumber had received an invoice showing that the lumber in a shipment was different from the lumber ordered, he was entitled to unload the lumber and take it to his lumber yard without said acts constituting an acceptance of said lumber as to dimensions, and there was no such custom between appellant and appellees; the lumber shipped by appellant to appellees in this instance came up to the standard known as "B and Better," and was in substantial compliance with the invoice, but was not in substantial compliance with appellee's order therefor; the acts of appellees with reference to said car of lumber between April 16, 1926, and the time of the fire did not indicate an intention to accept the lumber as the lumber ordered; from the prior course of dealings between the parties, and from all the facts and circumstances in connection with the order and shipment of the lumber in controversy, it was apparent to appellees from the conduct of appellant that H. W. Walker was acting for and on behalf of appellant, and that H. W. Walker was authorized by appellant to negotiate with appellees with reference to said car of lumber between April 16, 1926, and before the time of the fire.

The court overruled appellant's motion for judgment, and entered judgment that appellant take nothing by his suit. The court overruled appellant's motion for a new trial, and he prosecutes this appeal.

### Opinion.

Appellant discusses his first three propositions together. They are to the effect that, when the lumber ordered on arrival is found not to comply with the order, the appellees were put to an election either to accept or reject, and, if they accept, their protest is immaterial; that the removal of the lumber from the car in which they were shipped to their lumber yard, as a matter of law, is an acceptance; that the removal of the lumber to appellee's lumber yard was inconsistent with appellant's ownership, and, as a matter of law, is an acceptance. Briefly stated, appellant submits that, while the lumber shipped did not comply with lumber ordered, the removal of the lumber from the car to appellee's lumber yards, as a matter of law, was an acceptance of the lumber. Appellant refers us to Williston on Sales, § 48, subject: "What Constitutes Acceptance." It reads: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does not act in relation to them which is inconsistent

with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

The jury found that, while the lumber shipped was in compliance with the order in kind, it was not in substantial compliance with appellee's order apparently in the number of pieces and dimensions; that appellees indicated no intention to accept the lumber shipped as the lumber ordered.

Apparently from the invoice appellees knew that the lumber shipped was not as ordered, and wrote the letter copied in the above statement. The letter, as we view it, clearly indicated to appellant that appellees would not accept the lumber shipped as a compliance with the lumber ordered, and had phoned Mr. Walker, appellant's representative, to refuse the car, and that the lumber had been unloaded "in order to save demurrage."

If we correctly understand appellant's view, it is that, while the record shows a refusal to accept the lumber, the removal of the lumber from the car and placing it in appellee's lumber yard was such act of control or ownership as constitutes an acceptance as a matter of law. There is nothing in the language of the letter that indicates an acceptance of the shipment, but the contrary. In response to a special issue submitted (No. 12), the jury found that the acts of appellee J. T. Owen with reference to said car of lumber indicated no intention to accept. It might have been clearer and better to have submitted the question whether there was in fact an acceptance rather than the manifestation of an intention to accept, with a proper explanation as to what constitutes an acceptance. But the record does not show that J. T. Owen did anything with reference to the car of lumber other than to write the letter to appellee and to unload the car of lumber into appellee's lumber yard "to save demurrage," both of which were done without delay, and neither or both of which, as we view it, under all of the facts, are necessarily a conclusive manifestation on the part of appellees to exercise ownership or control of the lumber. We regard it as a question of fact to be determined by the jury. On the former appeal the opinion states: "Appellants (Owenses) requested the trial court to submit the issue to the jury as to whether they had in fact accepted the lumber at the time of the fire, and assign error to the action of the court in refusing said instruction. We sustain this assignment. While the evidence is very conflicting, and in many material respects contradictory, we think it was sufficient, under the peculiar facts in this case, to raise said issue."

From the reference in the opinion to the evidence on the former trial, we think it is substantially the same as on this trial. It is not contended that the evidence is not substantially the same on this trial as on the former trial. We assume that it is.

While this court is not necessarily committed to the same view of the law expressed by the Waco court on the former appeal, yet there should be a uniform holding of the courts as to the law on the same facts.

The question is presented: By unloading the car of lumber in their lumber yard, when appellants knew from the invoice that the lumber in the car was not as ordered, does such unloading constitute an acceptance of the lumber in the car as a matter of law? We have concluded that the facts do not show an acceptance. Had the appellees unloaded the car of lumber without any definite statement as to whether they did or did not accept the lumber, such action, we think, would show such assertion of ownership or control over the lumber as would in law constitute acceptance. But we do not think that the bare fact of the unloading of the car of lumber into appellee's lumber yard had the legal effect to destroy the unqualified declaration and notice, timely given to appellant, that appellees would not accept the lumber. Such declarations of appellees as are contained in the letter to appellant declining to accept the lumber are more than expressions of their intention in the matter, but without qualification they affirmatively disclaim ownership and control in themselves of the lumber, and in no way assert any right or claim for themselves in or to the lumber. The statement that they unloaded the car for the purpose of saving demurrage is no assertion of any right in themselves; the demurrage charge would not be a charge on appellees. Could it be said, under the facts that appellees unloaded the car without any authority from appellant to do so, and appellant sustained any damages thereby, it might be that appellees would be liable for such damage. We attribute no significance to the statement other than what it says, to save demurrage.

Appellant submits other propositions which we have considered. We think they present no reversible error.

Finding no reversible error, the case is affirmed.